| | |
|---|---|
| 1 | **KASOWITZ BENSON TORRES LLP** |
| 2 | ROBERT W. BOSSLET (SBN 278027) |
|   | RBosslet@kasowitz.com |
| 3 | 2029 Century Park East, Suite 2000 |
|   | Los Angeles, CA 90067 |
| 4 | Telephone: (424) 288-7900 |
| 5 | Facsimile: (424) 288-7901 |
| 6 | *Attorneys for Defendants YRC Inc. dba YRC Freight; YRC Worldwide Inc.; and Yellow Corporation* |
| 7 | |
| 8 | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| AISHA RANDALL, on behalf of herself and all others similarly situated, | Case No. |
| | [San Bernardino Superior Court Case No. CIV-SB-2200789] |
| Plaintiff, | **DEFENDANTS YRC INC., YRC WORLDWIDE INC., AND YELLOW CORPORATION'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, 1446 AND 1453** |
| vs. | |
| YRC INC. dba YRC FREIGHT, a Delaware Corporation; YRC WORLDWIDE INC., a Delaware Corporation; YELLOW CORPORATION, a Delaware Corporation; and DOES 1 Through 10, inclusive, | |
| Defendants. | |

TO THE CLERK OF THE COURT OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendants YRC Inc. dba YRC FREIGHT ("YRC Inc."), YRC Worldwide Inc. ("YRC Worldwide"), and Yellow Corporation ("Yellow") (collectively, "Defendants") hereby remove the above-entitled action, Case No. CIV-DS-2200789, from the Superior Court of California, County of San Bernardino, to the United States District Court for the Central District of California. Removal is based on the Class Action Fairness Act. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453 because minimal diversity exists and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I.   JURISDICTION AND VENUE

1. Original federal jurisdiction exists under the Class Action Fairness Act of 2005, codified in pertinent part at 28 U.S.C. § 1332(d) ("CAFA").

2. Plaintiff commenced an action in the Superior Court of the State of California, in and for the County of San Bernardino, Case No. CIV-DS-2200789 (the "State Court Action"). Pursuant to 28 U.S.C. §§ 84, 1441, and 1446(a), venue lies in the district and division in which the State Court Action is pending; that is, the United States District Court, Central District of California, Eastern Division.

## II.   PROCEDURAL BACKGROUND

3. On January 10, 2022, Plaintiff, purportedly on behalf of herself and a proposed class of all employees classified as exempt by Defendants, filed a Class Action Complaint and Jury Demand (the "Original Complaint") in the State Court Action. A true and correct copy of the Original Complaint is attached hereto as Exhibit A.

4. A true and correct copy of the Civil Cover Sheet and Certificate of Assignment filed by Plaintiff in the State Court Action are attached hereto as Exhibit B and Exhibit C, respectively.

5. A true and correct copy of the Summons, filed on February 15, 2022, is attached hereto as Exhibit D.

6. Plaintiff filed the First Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl.") on February 18, 2022; a true and correct copy is attached hereto as Exhibit E.

7. A true and correct copy of the Initial Case Management Conference Order, dated February 22, 2022, is attached hereto as Exhibit F.

8. A true and correct copy of a Certificate of Service of correspondence dated February 25, 2022, is attached hereto as Exhibit G.

9. Defendants were never served with the Original Complaint and pursuant to the meaning in 28 U.S.C. § 1446(b), did not receive, through service, any documents from which it could be determined that the State Court Action was removable prior to March 11, 2022, the date on which Defendants were served with the Summons and Amended Complaint. Thus, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) in that Defendants filed this Notice of Removal within 30 days after being served with a copy of the Summons and Amended Complaint in the State Court Action.

10. Exhibits A through G constitute all process, pleadings, and orders served or filed in the State Court Action.

11. Defendants are the only non-fictitious defendants and thus all named Defendants consent to and join in this removal.

**III. THIS CASE IS PROPERLY REMOVED TO FEDERAL COURT**

12. This Court has jurisdiction of this action under CAFA, pursuant to which a district court shall have original jurisdiction of a class action in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs and where any of the putative class members are citizens of a State different from any defendant. 28 U.S.C. § 1332(d). This case is properly removed under 28 U.S.C. § 1441(a) because it is a civil class action where the proposed class

contains at least 100 members; the defendant is not a state, state official or other governmental entity; the total amount in controversy for all class members exceeds $5,000,000; and there is diversity between at least one class member and one defendant.

13. Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 83 (2014). Rather, "[a] defendant's notice of removal need include only a plausible allegation" that the jurisdictional facts exist. Id. at 89.

14. "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Id. Following Dart Cherokee, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal." Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1184 (9th Cir. 2015); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."); Bridewell-Sledge v. Blue Cross of Cal., 798 F.3d 923, 929 (9th Cir. 2015) (holding that district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction'").

15. Evidence is required "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee, 574 U.S. at 83. If a plaintiff contests a defendant's allegation concerning the amount in controversy, both sides may "submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Arias, 936 F.3d 920, 925 (9th Cir. 2019) (citing Dart Cherokee, 574 U.S. at 88); see Lopez v. First Student, Inc., 427 F. Supp. 3d 1230, 1234 (C.D. Cal. 2019) (same). At such time, the removing party need not present extensive or precise evidence, and may rely on reasonable assumptions "founded on the allegations of the complaint." Arias, 936 F.3d 920, 925 (9th Cir. 2019).

16. Where "a removing defendant has shown potential recovery *could* exceed $5 million and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant 'has borne its burden to show the amount in controversy exceeds $5 million.'" Arias, 936 F.3d at 927 (citation and brackets omitted); see Lopez, 427 F. Supp. 3d at 1237. Under the preponderance of the evidence standard, a defendant need only establish that it is "more likely than not" that the amount in controversy requirement is satisfied. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). In assessing the amount in controversy, a removing defendant may rely on "a chain of reasoning that includes assumptions." Arias, 936 F.3d at 925; see Lopez, 427 F. Supp. 3d at 1235 (same). Such assumptions "need not be proven"; they need only have "some reasonable ground underlying them." Arias, 936 F.3d at 927; see Lopez, 427 F. Supp. 3d at 1235-36 (same).

17. Below, Defendants not only provide a plausible allegation that jurisdictional facts exist, but they also establish the existence of such facts by a preponderance of the evidence.

### A. Diversity Is Satisfied

18. CAFA's minimal diversity requirement is satisfied when (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d).

19. Plaintiff Aisha Randall, was at the time of the filing of the State Court Action, and still is, a resident of the State of California, and not a resident of the States of Delaware or Kansas. (See Am. Compl. ¶ 3.) For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima

facie evidence of domicile. Id. Accordingly, Plaintiff is a citizen of the State of California. See id.

20. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where the corporation's high level officers direct, control, and coordinate the corporation's activities," or its "nerve center." Hertz Corp. v. Friend, 559 U.S. 77, 80, 93 (2010).

21. YRC Inc. was, at the time Plaintiff commenced the State Court Action, and still is, a corporation incorporated in the State of Delaware with its principal place of business located in Overland Park, Kansas. (See Declaration of Jared Smith ("Smith Decl.") ¶ 2.) Defendant Yellow was at the time Plaintiff commenced the State Court Action, and still is, a corporation incorporated in the State of Delaware with its principal place of business located in Overland Park, Kansas. (Id. ¶ 3.)

22. Yellow was formerly doing business as YRC Worldwide. (Id.) On February 4, 2021, YRC Worldwide underwent a name change to Yellow Corporation. (Id.) Defendants YRC Inc. and Yellow are citizens of the states of Delaware and Kansas, and not of California. See 28 U.S.C. § 1332(c); Hertz, 559 U.S. at 77, 80.

23. The citizenship of the named fictitious defendants "Does 1-10" should be disregarded for the purposes of removal pursuant to 28 U.S.C. § 1441(a). See 28 U.S.C. § 1441(a) ("[F]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); see also Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Accordingly, the existence of the Does 1-10 defendants does not deprive this Court of jurisdiction.

6
DEFENDANTS' NOTICE OF REMOVAL

24. In light of the foregoing, diversity of citizenship exists under 28 U.S.C. § 1332(d): Plaintiff is a citizen of the State of California and Defendants are citizens of the States of Delaware and Kansas.

### B. The Class Size Is Sufficient[1]

25. CAFA does not apply where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B).

26. As described in the Amended Complaint, Plaintiff filed the State Court Action as a class action on behalf of herself and a proposed class of "[a]ll Defendants' California-based employees who were classified as exempt, including all City Dispatch Supervisors, at any time during the four years before the filing of this Complaint through the date of trial." (Am. Compl. ¶ 11.) Plaintiff filed the Amended Complaint on February 18, 2022. Thus, Plaintiff's proposed class period is from February 18, 2018 to the trial date.

27. Plaintiff alleges that she estimates the membership of the class to "be in excess of 100 individuals" and that "[t]he number and identity of members can be readily ascertained using Defendants' records." (Id. ¶ 24.)

28. Defendants' records reflect that from February 18, 2018 through April 6, 2022, Defendants employed approximately 350 employees in California that Defendants classified as exempt, including current and former employees (the "Putative Class Members"). (Smith Decl. ¶ 5.)

29. Accordingly, Plaintiff's proposed class contains approximately 350 members.[2]

---

[1] Defendants' description of Plaintiff's proposed class is without waiver of any objections or defenses Defendants may assert against Plaintiff's Amended Complaint and/or request for class certification.

[2] For the avoidance of doubt, none of the exceptions set forth in 28 U.S.C. §§ 1332(d)(3)-(5) apply to this action. The exception in 28 U.S.C. § 1332(d)(3), which applies where the "primary defendants are citizens of the State in which the

**C.     The Amount in Controversy Exceeds $5,000,000**

30.     CAFA requires that the "matter in controversy exceed the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Further, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

31.     The amount in controversy is "'simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.'" Arias, 936 F.3d at 927 (citation omitted); see Lopez, 427 F. Supp. 3d at 1236 (same). It "reflects the *maximum* recovery the plaintiff could reasonably recover," and includes "all amounts 'at stake' in the litigation at the time of removal, 'whatever the likelihood that the plaintiff will actually recover them.'" Arias, 936 F.3d at 927 (citation and brackets omitted). Thus, an "assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite amount.'" Id. (citation and ellipsis omitted).

32.     Defendants need not prove Plaintiff's case by conceding non-existent liability for non-existent violations pled through defective allegations. See id. at 927 (rejecting any requirement that defendant "prove it actually violated the law at the assumed rate"); Lewis v. Verizon Commc'n, Inc., 627 F.3d 395, 400 (9th Cir. 2010)

---

action was originally filed," does not apply because the action was originally filed in California and Defendants are not citizens of California. Similarly, the exceptions in 28 U.S.C. § 1332(d)(4), which apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed," are inapplicable because this action was originally filed in California and Defendants are not California citizens. Finally, the exceptions in 28 U.S.C. § 1332(d)(5), which apply to defendants who are governmental entities or putative classes which number less than 100 in the aggregate, are inapplicable because Defendants are not governmental entities and, as demonstrated, the proposed class exceeds 100 members.

("To establish the jurisdictional amount, [defendant] need not concede liability for the entire amount[.]"); Grant v. Capital Mgmt. Servs, L.P., 449 Fed. Appx. 598, 600 (9th Cir. 2011) (holding the district court improperly "required that [defendant] admit liability under the [act] to remove the case to federal court"); Lopez, 427 F. Supp. 3d at 1236 ("Defendants need not prove that they actually violated the law at the established rate or actually owe the maximum split shift wages to justify removal.").

33. In the Amended Complaint, Plaintiff asserts six claims for relief against Defendants as follows: (1) as the First Cause of Action, failure to pay overtime wages in alleged violation of California Labor Code Sections 510 and 1994 and Section 3 of applicable Industrial Welfare Commission ("IWC") Order(s); (2) as the Second Cause of Action, failure to provide meal breaks and meal break premium wages in alleged violation of California Labor Code Sections 226.7 and 512 and Section 11 of applicable IWC Wage Order(s); (3) as the Third Cause of Action, failure to provide rest breaks and rest break premium wages in alleged violation of California Labor Code Section 226.7 and Section 12 of applicable IWC Wage Order(s); (4) as the Fourth Cause of Action, failure to provide accurate wage statements in alleged violation of California Labor Code Section 226; (5) as the Fifth Cause of Action, failure to timely pay wages due at separation in alleged violation of California Labor Code Sections 201-203; and (6) as the Sixth Cause of Action, alleged violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

34. Without conceding that Plaintiff, and the class she purports to represent, are entitled to the damages sought, as detailed below, the amount in controversy in this putative class action exceeds, in the aggregate, $5,000,000, exclusive of interest and costs, based on the allegations in the Complaint and Defendants' records.

35. **Overtime Claim (First Cause of Action).** In alleged violation of California Labor Code Sections 510 and 1994 and Section 3 of applicable IWC

1  Order(s), Plaintiff alleges that "[d]uring the Class Period, Plaintiff and each Class
2  Member worked in excess of the maximum regular rate hours set by the IWC in the
3  applicable Wage Order(s) or statutes, entitling them to overtime compensation.
4  Despite this, Defendants had a *consistent policy* of paying Plaintiff and each Class
5  Member a fixed salary regardless of the number of hours they worked and of failing
6  to pay them overtime compensation for hours worked in excess of eight (8) per day
7  or forty (40) per week." (Am. Compl. ¶ 33 (emphasis added); see also id. ¶¶ 40-42.)

8        36. Although Defendants would be justified in assuming a 100% violation
9  rate based on that allegation (i.e., assuming that employees worked at least one hour
10 of unpaid overtime each day), Defendants make a conservative estimate of a 20%
11 violation rate (i.e., assuming that employees worked only one hour of unpaid
12 overtime each week or 12 minutes per day).  This rate is routinely accepted as a
13 reasonable estimate of a violation rate for a "consistent" violation.  See Hull v. Mars
14 Petcare US, Inc., No. 18-cv-01021, 2018 WL 3583051, *4 (C.D. Cal. July 25, 2018)
15 (assumption of one-hour-a-week violation was reasonable); Ray v. Wells Fargo
16 Bank, N.A., No. 11-cv-01477, 2011 WL 1790123, *7 (C.D. Cal. May 9, 2011)
17 (assumption of one hour of overtime reasonable given allegation of "consistent"
18 failure to pay overtime); Jimenez v. Allstate Ins. Co., No. 10-cv-08486, 2011 WL
19 65764, *3 (C.D. Cal. Jan. 7, 2011) (assumption of one hour of unpaid overtime per
20 week based on "consistent" overtime work was reasonable).

21       37. Based on the conservative assumption that employees worked only one
22 hour of unpaid overtime each week or 12 minutes per day, and Defendants' records
23 showing that there are approximately 350 Putative Class Members who worked in
24 the aggregate approximately 34,166 workweeks, for at least 8 hours per day and 40
25 or more hours per week, at an average hourly salary of approximately $34.65 (Smith
26 Decl. ¶¶ 5-7, 9), the amount in controversy for the First Cause of Action is
27 **$1,775,777.85**.  This amount is calculated as follows:
28

|   |   |
|---|---|
| 1 | 350 [Putative Class members] |
| 2 | x 34,166 [workweeks] |
| 3 | x $34.65 [average hourly salary] |
| 4 | = $1,775,777.85 |

38. **Meal Break and Rest Period Claims (Second and Third Causes of Action)**. In alleged violation of California Labor Code Sections 226.7 and 512 and Section 11 of applicable IWC Wage Order(s), Plaintiff alleges that "[d]uring the Class Period, Defendants had a *consistent policy* which did not provide Plaintiff and Class Members with duty-free meal periods of at least thirty (30) minutes for shifts of five hours or more, which began before the end of the fifth hour of work, and failed to pay such employees one (1) hour of pay at their regular rate of compensation for each workday a meal period was not authorized or permitted, as required by California wage and hour laws. Plaintiff and other members of the Plaintiff Class worked shifts of more than 10 hours per day and were not provided with a second off-duty meal period of 30 minutes for each shift of more than 10 hours, which began before the end of the tenth hour of work." (Am. Compl. ¶ 34 (emphasis added); see also id. ¶¶ 43-45.)

39. Similarly, in alleged violation of California Labor Code Section 226.7 and Section 12 of applicable IWC Wage Order(s), Plaintiff alleges that "Defendants had a *consistent policy* which did not authorize or permit Plaintiff and Class Members to receive duty-free rest periods of at least ten (10) minutes per four (4) hours, or major fraction thereof, worked, and failed to pay such employees one (1) hour of pay at their regular rate of compensation for each workday a rest period was not authorized - or - permitted, as required by California wage and hour laws. Furthermore, Plaintiff and Class Members worked shifts of more than 10 hours per day and were not provided with a third duty-free rest period of 10-minutes for each shift of more than 10 hours. Defendants did not provide Plaintiff and other

Class Members with any written rest period policy." (Id. ¶ 35 (emphasis added); see also id. ¶¶ 46-48.)

40. In sum, Plaintiff alleges that Defendants had a "consistent policy" of depriving class members meal and rest breaks. Accordingly, for purposes of calculating the amount in controversy, a 100% violation rate would be justified. See, e.g., Cortez v. Parker-Hannifin Corp., No. 20-cv-06430, 2020 WL 5905435, at *5 n.3 (C.D. Cal. Oct. 6, 2020) (noting that "with indeterminate phrases like 'pattern and practice,' Defendants could have calculated the amount in controversy based on a 100% violation rate"); Sanchez, 2015 WL 12765359, at *6 (finding that "use of a 100% violation rate is proper" where the "complaint alleges universal deprivation of meal and rest periods"). Similarly, even a 60% violation rate would be appropriate. See Hull, 2018 WL 3583051, at *4-5 (60% violation rate for meal and rest break claims reasonable where the alleged violations are based on a standard policy); Feao v. UFP Riverside, LLC, No. 17-cv-03080, 2017 WL 2836207, *5 (C.D. Cal. June 29, 2017) (60% violation rate for meal and rest period claims reasonable where the complaint included "uniform policy and systematic scheme" language). Other courts have used 20% as a reasonable metric. Danielsson v. Blood Centers of Pac., No. 19-cv-04592, 2019 WL 7290476, *6 (N.D. Cal. Dec. 30, 2019) (citing cases); Mendoza v. Savage Servs. Corp., No. 19-cv-00122, 2019 WL 1260629, *2 (C.D. Cal. Mar. 19, 2019) ("[C]ourts in [the Central District of California] routinely apply a 20% violation rate – that is, one missed meal and rest period per work week – for meal and rest period premiums."); Bermejo v. Lab'y. Corp., No. 20-cv-05337, 2020 WL 6392558, at *5-6 (C.D. Cal. Nov. 2, 2020) (finding 20% violation rate for meal and break period claims to be reasonable); Kastler v. Oh My Green, Inc., No. 19-cv-02411, 2019 WL 5536198, *5 (N.D. Cal. Oct. 25, 2019) (same).

41. Defendants adopt the most conservative violation rate of $20% – meaning only one missed meal and rest break per week per employee. Based on that assumption, and the records showing that there are approximately 350 Putative

1  Class Members who earned an average hourly salary of approximately $34.65
2  (Smith Decl. ¶ 5, 7), the amount in controversy for the Second Cause of Action is
3  **$1,183,851.90** and the Third Cause of Action is **$1,183,851.90**. This amount – for
4  each of these two causes of action – is calculated as follows:

>       350 [Putative Class members]
>       x $34.65 [average hourly salary]
>       = $1,183,851.90

42. **Wage Statement Violations (Fourth Cause of Action).** In alleged violation of California Labor Code Section 226, Plaintiff alleges that "Defendants knowingly and willfully failed to provide accurate itemized wage statements to Plaintiff and other members of the Plaintiff Class . . ." (Am. Compl. ¶ 36; see also id. ¶¶ 49-53.)

43. Thus, it is reasonable for Defendants to assume each wage statement contained at least one alleged inaccuracy. See Bermejo, 2020 WL 6392558, at *7 ("[G]iven that Defendant can reasonably assume its alleged 'practices and policies' of underpaying wages translate to about one overtime, meal break, and rest break violation each per week, every wage statement (covering a two-week period) likely contained an alleged error"); Ritenour v. Carrington Mortg. Servs LLC, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); Hender v. Am. Directions Workforce LLC, No. 19-cv-01951, 2020 WL 5959908, at *7 (E.D. Cal. Oct. 8, 2020) (finding 100% violation rate for wage statement claims reasonable because it followed defendant's equally reasonable assumption of a 20% violation rate for plaintiff's meal and rest break violation claims, with each terminated class member missing one meal/rest break per week); Cavada v. Inter-Continental Hotels Grp., Inc., No. 19-cv-01675, 2019 WL 5677846, *8 (S.D. Cal. Nov. 1, 2019) (same).

44. California Labor Code section 226(e)(1) provides for a penalty of $50.00 for the initial pay period, and $100.00 for each violation in a subsequent pay period within the one-year statute of limitations, up to a maximum of $4,000.  See Soto v. Tech Packaging, Inc., No. 19-cv-01766, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019) ("[I]t is proper here to apply section 226(e)(1) penalties directly as the statute reads[.]"); Garnett v. ADT LLC, 74 F. Supp. 3d 1332, 1336 (E.D. Cal. 2015) ("[T]he court will interpret the language of section 226(e) according to its plain meaning. Defendant faces a $50 penalty for each violation in an initial pay period, and a $100 penalty per employee for each violation that occurs in a pay period after the initial pay period.").

45. Based on Defendants' records showing that there are approximately 350 Putative Class Members and that they are paid 24 times per year (Smith Decl. ¶¶ 5, 10), the amount in controversy for this claim is **$822,500.00**, calculated as follows:

350 [Putative Class Members]

x ($50 [for first violation] + (100 x 23 [for subsequent violations]))

= $822,500.00

46. **Waiting Time Violation (Fifth Cause of Action).**  In alleged violation of California Labor Code Sections 201-203, Plaintiff alleges that "Defendants had a *consistent policy* of failing to pay Plaintiff and members of the Plaintiff Class all wages due upon separation, in violation of California wage and hour laws." (Am. Compl. ¶ 37 (emphasis added).)  Further, Plaintiff alleges that "Defendants had a *consistent policy* of not paying final wages immediately to fired employees and within 72 hours to employees who voluntarily quit." (Am. Compl. ¶ 37 (emphasis added); see also id. ¶¶ 54-58.)

47. Section 203 of the California Labor Code provides that if an employer willfully fails to pay the wages of an employee who is discharged or who quits, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid." This provision has been interpreted to mean the penalty is an

amount "equal to the employee's daily wages for each day . . . that the wages are unpaid." Caliber Bodyworks, Inc. v. Superior Ct., 134 Cal. App. 4th 365, 377 (2005), disapproved on another ground by ZB, N.A. v. Superior Court, 8 Cal. 5th 175, 196, fn. 8 (2019), as modified (Dec. 11, 1998); see also Mamika v. Barca, 68 Cal.App. 4th 487, 493 (1998) ("A proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.") The statute imposes a three-year statute of limitations, determined from the date the complaint was filed. See Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1395-1401 (2010).

48. Given Plaintiff's allegations, it is fair to infer that every employee has incurred at least some unpaid time every week, entitling employees to waiting time penalties 100% of the time. See, e.g., Garza v. Winco Holding, Inc., No. 20-cv-01354, 2022 WL 902782, *9 (E.D. Cal. Mar. 28, 2022) ("[U]niform policies provide a reasonable basis for [defendant] to assume a 100% violation rate for [plaintiff's] waiting time claim"); see also Bermejo, 2020 WL 6392558, at *6 (finding 100% violation rate reasonable because "for waiting time penalties, a 100% violation rate simply means that all terminated class members were not paid wages owed at least one time during the claim period"); Mendoza v. Nat'l Vision, Inc., No. 19-cv-01485, 2019 WL 2929745, *6 (N.D. Cal. July 8, 2019) (finding that a 100% violation rate was appropriate).

49. Based on Defendants' review of records, approximately 148 of the Putative Class Members are former employees whose employment with Defendants terminated between February 18, 2019 (i.e., within three years from the date of the Amended Complaint) and April 6, 2022. (Smith Decl. ¶ 8.)

50. To ensure a conservative calculation of damages for waiting time penalties, Defendants assume that each of the approximately 148 former employees were paid at the average rate of pay of $34.65 and worked only eight (8) hours a

day. Plaintiff's waiting time penalty claim places approximately **$1,230,768.00** in controversy:

    148 [former exempt employees]

   x $34.65 [average hourly rate of pay]

   x 8 [hours per day]

   x 30 [days]

  **= $1,230,768.00**

51. **Sub-total Before Attorneys' Fees**.  Thus, even before attorneys' fees are included, the total amount in controversy exceeds $5,000,000.  As shown above, the amount in controversy from Plaintiff's First, Second, Third, Fourth and Fifth Causes of Action is **$6,196,749.65**:

    $1,775,777.85 (First Cause of Action)

   + $1,183,851.90 (Second Cause of Action)

   + $1,183,851.90 (Third Cause of Action)

   + $822,500.00 (Fourth Cause of Action)

   + $1,230,768.00 (Fifth Cause of Action)

   = $6,196,749.65

52. **Attorneys' Fees.**  Plaintiff seeks to recover attorneys' fees on the First Cause of Action (Am. Compl. ¶ 42), Second Cause of Action (id. ¶ 45), Third Cause of Action (id. ¶ 45), Fourth Cause of Action (id. ¶ 53), and Sixth Cause of Action (id. ¶ 65) (see also Prayer for Relief ¶ 10).

53. "[W]hen a statute . . . provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."  Arias, 936 F.3d at 922. Accordingly, because "several of the California wage and hour laws mentioned in the Complaint award attorney's fees to a successful plaintiff . . . an estimate of attorney's fees must be included in the estimated amount in controversy" on all of Plaintiff's claims.  Danielsson, 2019 WL 7290476, at *8 (including meal and rest break claims in calculation of attorney's

fees); Kastler, 2019 WL 5536198, at *7 (calculating attorneys' fees based on all wage and hour claims because plaintiff "seeks attorney's fees under statutes that allow fees to be recovered by an employee injured as a result of the alleged wage and hour violation").

54. While there is no per se rule on an attorney's fees rate, district courts have held that "25% of a reasonable and well-supported amount in controversy is an appropriate benchmark estimate for attorney's fees for CAFA removal purposes." Danielsson, 2019 WL 7290476, at *8 (collecting cases); Hender, 2020 WL 5959908, at *8-9 (applying 25% fee award in amount in controversy calculation); Kastler, 2019 WL 5536198, at *7 ("Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate"). Accordingly, it is reasonable to assume that the benchmark rate of 25% applies to the claims.

55. Because Plaintiff seeks attorneys' fees for the First, Second, Third and Fourth Causes of Action, but does not expressly seek such fees for the Fifth Cause of Action, Defendants omit the amount in controversy from the Fifth Cause of Action for purposes of determining the amount in controversy from attorneys' fees. Defendants similarly omit the amount in controversy from the Sixth Cause of Action for purposes of determining the amount in controversy from attorneys' fees, as they have not calculated the amount in controversy related thereto. The damages from just the First, Second, Third and Fourth Causes of Action total $4,965,981.65, calculated as follows:

$1,775,777.85 (First Cause of Action)
+ $1,183,851.90 (Second Cause of Action)
+ $1,183,851.90 (Third Cause of Action)
+ $822,500.00 (Fourth Cause of Action)
= $4,965,981.65.

56. Defendants therefore submit that the amount in controversy for

attorneys' fees is at least **$1,241,495.41**, calculated by multiplying $4,965,981.65 and 25%:

>       $4,965,981.65
>
>       x 25%
>
>       = $1,241,495.41

57. **Total Amount in Controversy.** The total amount in controversy based on Plaintiff's claims is at least $7,438,245.06, as reflected in the following table:

| AMOUNT IN CONTROVERSY | |
|---|---|
| **Cause of Action** | **Amount** |
| First (overtime) | $1,775,777.85 |
| Second (meal period violation) | $1,183,851.90 |
| Third (rest period violation) | $1,183,851.90 |
| Fourth (wage statement violations) | $822,500.00 |
| Fifth (waiting time penalty) | $1,230,768.00 |
| Attorneys' Fees | $1,241,495.41 |
| **TOTAL** | **$7,438,245.06** |

58. This calculation, based on the most conservative assumptions, does not even include an amount for Plaintiff's Sixth Cause of Action. The inclusion of that claim would further increase the amount in controversy.

59. Accordingly, given Plaintiff's allegations, Defendants' records, and the foregoing assumptions, the amount placed in controversy in this action is greater than the jurisdictional amount of $5,000,000 required by CAFA.

**IV.     NOTICE OF REMOVAL**

60. Pursuant to Local Rule 7.1-1, a Notice of Interested Parties is being filed concurrently with this Notice of Removal.

61. Pursuant to 28 U.S.C. § 1446(d), Defendants are also providing written notice of the filing of this Notice of Removal to Plaintiff, and are filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, in and for the County of Bernardino.

**WHEREFORE**, Defendants pray that the State Court Action be removed from the Superior Court of the State of California, in and for the County of San Bernardino, to the United States District Court, Central District of California, Eastern Division.

DATED: April 8, 2022

/s/ Robert W. Bosslet
KASOWITZ BENSON TORRES LLP
*Attorneys for Defendants YRC Inc. dba YRC Freight, YRC Worldwide, Inc., and Yellow Corporation*